# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | |
| NAOMI MCMURTRY, | |
|               Petitioner, | No. 15-405V |
| | Special Master Christian J. Moran |
| v. | Filed: September 26, 2018 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Attorneys' Fees and Costs; resort expenses |
|               Respondent. | |
| * * * * * * * * * * * * * * * * * * * | |

Lawrence R. Cohan, Anapol Weiss, Philadelphia, PA, for petitioner;
Camille M. Collett, United States Dep't of Justice, Washington, DC, for Respondent.

## PUBLISHED DECISION ON FEES AND COSTS[1]

On June 5, 2018, petitioner Naomi McMurtry moved for final attorneys' fees and costs. **She is awarded $73,324.43.**

\* \* \*

On April 22, 2015, Ms. McMurtry filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §300a-10 through 34, alleging the flu vaccine caused her to develop GBS. The Secretary filed his Rule 4(c) report on

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the decision.

August 7, 2015, stating that Ms. McMurtry had not sufficiently established that she suffered from GBS and had not sufficiently demonstrated that the flu vaccine could cause GBS.

In the Rule 5 status conference, the Secretary stated that settlement discussions may be appropriate after review of an expert report from Ms. McMurtry. Order, issued Aug. 26, 2015. The petitioner requested, and was granted, 60 days to file the expert report. After one enlargement of time, Ms. McMurtry filed a report from Dr. Lawrence Steinman on November 17, 2015.

In a status conference to discuss the petitioner's report, the Secretary stated that he would like to obtain a report from his own expert before deciding if he would be interested in settling the case. Order, issued December 2, 2015. After requesting and receiving two enlargements of time to file his report, on March 22, 2016, the Secretary filed a status report stating that he was interested in pursuing informal resolution of the claim.

On May 31, 2016, the undersigned held a status conference to discuss the potential settlement. During the status conference, the petitioner reported that a life care planner had been retained and that the petitioner would be submitting a demand to the respondent in the next 60 days. Order, issued May 31, 2016.

On August 2, 2016, the petitioner filed a status report confirming that she had sent a comprehensive settlement demand to the Secretary and that all medical records had been filed. Petitioner also noted that she had recently gone on Medicaid and thus her counsel had to identify any potential outstanding Medicaid liens. However, petitioner noted that any outstanding lien was likely negligible in amount, if one existed at all.

In a status report filed on September 28, 2016, the Secretary reported that he would be retaining an opinion from both a life care planner and an economist before agreeing to a settlement.

A status conference was held on October 28, 2016, to discuss the parties' progress in settling the case. The Secretary reported that a joint site visit was scheduled for November 2016 and that he was in consultations with his economist regarding the lost wages claim. In a status report filed on December 5, 2016, the respondent stated that a preliminary evaluation did not support a claim for lost wages, but that he required additional time and information from the petitioner before making his position.

During a status conference on February 2, 2017, Ms. McMurtry represented that she anticipated finalizing the settlement within the next month based upon the progress that had been made in the previous month. During the subsequent month, petitioner's counsel travelled to Phoenix, AZ to hold a 2.5 hour lunch meeting with Ms. McMurtry for the purpose of discussing the settlement. For this trip, petitioner's counsel billed $4,742.47 in fees and costs, including three nights at a $629.89 a night luxury resort.

Ms. McMurtry filed a status report on April 4, 2017, reporting that the respondent had requested additional medical records and a copy of Ms. McMurtry's social security disability application. Ms. McMurtry reported that she had filed the requested records and had recently learned that the Secretary would be retaining a vocational expert. During a status conference on April 27, 2017, the Secretary reported that he would need an additional 30 days to obtain the report from the vocational expert. Following two motions for enlargements, the Secretary obtained and shared with Ms. McMurtry the expert report from his vocational expert on July 10, 2017. See Pet'r's Rep., filed July 10, 2017.

During a status conference held on August 3, 2017, the petitioner reported that the Secretary had rescinded the lost wages offer and that the case may not settle. Nonetheless, on September 6, 2017, the parties represented that they reached a tentative settlement agreement and the undersigned issued a 15-week stipulation order the next day. Based on a stipulation filed on December 14, 2017, the undersigned issued a decision awarding compensation to Ms. McMurtry. Decision, issued December 14, 2017, 2017 WL 6945561. The decision included three components: more than $250,000 in a lump sum, the reimbursement of two Medicaid liens, each for less than $1,000, and the purchase of an annuity.

Ms. McMurtry then filed the instant motion for attorneys' fees and costs, requesting $68,533.00 in fees and $28,304.39 in attorneys' costs, for a total of $96,837.39. See Pet'r's Mot, filed June 5, 2018, at 4. The Secretary filed a response to Ms. McMurtry's motion. The Secretary represented that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Resp't's Resp., filed June 15, 2018, at 2. With respect to amount, the Secretary recommended "that the special master exercise his discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3.

Because Ms. McMurtry received compensation, she is entitled to an award of attorneys' fees and costs. See 42 U.S.C. § 300aa-15(e). The unresolved question is the reasonable amount of attorneys' fees and costs.

## I. Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, the court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348.

### A. Reasonable Hourly Rate

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See Shea v. Sec'y of Health & Human Servs., No. 13-737V, 2015 WL 9594109, at *2 (Fed. Cl. Spec. Mstr. Dec. 10, 2015) ("special masters are not obligated to evaluate an attorney's billing records on a line-by-line basis in making the reasonableness determination . . . and certainly need not do so when Respondent has not attempted to highlight any specific alleged inefficiencies"). The hourly rates proposed for the two attorneys on this case—Lawrence Cohan and David Carney—are reasonable. See McCulloch v. Sec'y of Health & Human Servs., 2015 WL 5634323, at *21 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

### B. Reasonable Number of Hours

The Secretary also did not directly challenge any of the requested hours as unreasonable. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

Speaking generally, the number of hours billed in this case struck the undersigned as very high compared with his experience evaluating cases of similar complexity. A review of the billing records indicates at least two explanations for this observation.

4

First, petitioner's attorneys often performed work expected from a paralegal. When attorneys bill at the high rates demanded by attorneys, they should be performing work that requires the skills of an attorney and not those of a paralegal or secretary. See Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009) (noting that "the Special Master exercised appropriate discretion in denying requested costs for work performed by Petitioner's counsel's associate" when the special master determined "that the associate's time spent obtaining medical records was more consistent with paralegal duties").

In the case here, a substantial portion of the entries relate to administrative matters in this case and not to the type of work that can reasonably be billed at an attorneys' rate. These include preparing and filing medical records, preparing and filing pro forma documents, communications with the client for the purpose of collecting medical records, and calendaring scheduling orders. All of these tasks should either not be performed by an attorney, or not billed at an attorney's standard rate. To account for these issues, the undersigned finds a 15% reduction in the number of hours billed to be appropriate.

Second, it appears that petitioner's attorneys considered 0.2 hours to be the smallest quantum of time available for their billing entries. Considering the nature and frequency of the correspondence, 10-15 minutes as a minimum for the sending and receipt of administrative emails with clients, life care planners, and experts appears high. See Rasmussen v. Sec'y of Health & Human Servs., No. 91-1566V, 1996 WL 752289, at *2 (Fed. Cl. Spec. Mstr. Dec. 20, 1996) (noting that counsel's practice of billing in increments not smaller than a quarter hour could result in overbilling).

This observation regarding the billing entries is consistent with a more general finding that the amount of time billed on non-substantive work was often high for the nature of the work performed. As an example, in multiple entries Mr. Carney billed approximately 15-25 minutes for emails to the Secretary to determine if the Secretary objected to petitioner's motions for enlargement. In the undersigned's experience, these types of communications are often not even billed, much less for the amount of time requested here.

In another example, the undersigned compared the amount of time that the life care planner and Mr. Carney billed for the time spent on the same email correspondence. Mr. Carney's entries sometimes indicated that he spent an order of magnitude more time on emails than his life care planner. For example, compare these entries for the period of October 6, 2016 to October 16, 2016:

5

Mr. Carney's billing sheet:

| Date | Description | Atty | Rate | Hours | Amount |
|---|---|---|---|---|---|
| 10/6/16 | emails to and from LCPer re site visit | DJC | $290.00 | 0.2 | $58.00 |
| 10/7/16 | emails to and from client re updated meds | DJC | $290.00 | 0.2 | $58.00 |
| 10/7/16 | emails to and from LCPer re site visit | DJC | $290.00 | 0.2 | $58.00 |
| 10/12/16 | emails to and from LCPer re site visit | DJC | $290.00 | 0.2 | $58.00 |
| 10/16/16 | emails to and from LCPer re site visit | DJC | $290.00 | 0.2 | $58.00 |

Pet'r's Fees Mot. at PDF 16.

The life care planner's billing sheet:

| Date | Description | Minutes | Rate | Amount |
|---|---|---|---|---|
| 7/29/2016 | Amend Vocational Assessment | 43 | 125.00 | 89.58 |
| 10/11/2016 | Email Dave Carney regarding Life Care Plan | 3 | 125.00 | 6.25 |
| 10/12/2016 | Call Linda Curtis regarding Life Care Plan and site visit | 12 | 125.00 | 25.00 |

Id. at PDF 86.

Based on these entries, for the given time period it would appear that Mr. Carney billed 0.8 hours, or $232, for correspondence with the life care planner while the life care planner billed 0.05 hours, or $6.25 for the same correspondence.

These types of inflated entries appear throughout petitioner's motion for fees and costs. To address the excessive billing, the undersigned finds an additional 15% reduction in the number of hours billed to be appropriate.

## II. Costs

In addition to seeking attorneys' fees, Ms. McMurtry seeks an award of costs totaling $28,304.39. As with the fees request, the amount petitioner requested to be reimbursed for costs struck the undersigned as high for a case of this complexity.

Ms. McMurtry's motion included costs for medical records retrieval, mailings, and the use of specialists to resolve Medicaid liens. These costs are reasonable and are awarded in full. Ms. McMurtry also retained the expertise of a life care planner and a medical expert. These costs are also reasonable and are awarded in full.

Ms. McMurtry's motion sought reimbursement of costs associated with a trip made by Mr. Carney to Phoenix, Arizona from Tuesday, February 28, 2017, to

Friday, March 3, 2017.[2]  The meeting with Ms. McMurtry consisted of a 2.5 hour lunch meeting.  Pet'r's Fees Mot. at PDF 20.  At the meeting, Mr. Carney and his client discussed issues concerning the settlement of the case.  Id. at PDF 20.  For the purpose of holding this 2.5 hour lunch meeting with Ms. McMurtry, petitioner's attorney billed a total of $2,567.47 in costs[3] and $2,175.00 in fees.  In her motion for fees, petitioner included an affidavit from Mr. Cohan, stating that "[g]iven the sizable nature of the settlement and its implications, this case could not be settled without a face-to-face meeting with Petitioner."  Pet'r's Fees Mot. at PDF 6.

This trip raises two questions:  first, should the trip have occurred at all, and second, assuming the trip was reasonable, were the incurred expenses reasonable.

As to whether the trip was reasonable, the question is close.  There is no bright line rule saying that in-person meetings are always appropriate or never appropriate.  In the right circumstances, face-to-face meetings can be valuable.

Here, Ms. McMurtry's justification seems underdeveloped.  Just before the trip, Mr. Carney represented a settlement just needed to be finalized.  See order, issued Feb. 2, 2017.  It may be the case that Mr. Carney's process for "finalization" anticipated an in-person meeting but Mr. Carney did not communicate that step in the status conference.  And, if Mr. Carney were planning a trip to meet with his client, Mr. Carney may not have wanted to disclose communications with his client.

The strongest rationale for the in-person meeting comes from Mr. Cohan's affidavit.  But, the entire justification is contained in one sentence: "Given the sizable nature of the settlement and its implications, this case could not be settled without a face-to-face meeting with Petitioner."  As with the situation with Mr.

---

[2] Ms. McMurtry's motion indicates that 75% of the purpose of the trip was to meet with Ms. McMurtry and that 25% was concerning another case in this program (Mahroof v. Sec'y of Health and Human Servs.).  However, no additional explanation for this breakdown is provided.  Pet'r's Fees Mot. at PDF 104.

[3] The total costs were actually higher, these costs reflect 75% of the total costs because petitioner's attorney stated that he also performed business related to another case on this trip.  Pet'r's Fees Mot. at PDF 104.  However, in contrast to his costs, Mr. Carney billed 100% of his travel rate for the time spent travelling to and from Phoenix.  Id. at 20.  This amount is reduced by 25% to reflect the dual purpose of this trip.

Carney, Mr. Cohan may be reluctant to disclose either communications with his client or his mental impressions that led to this conclusion.

Ultimately, the undersigned trusts the judgment of Mr. Cohan and Mr. Carney, who achieved a good result for Ms. McMurtry and good results for other petitioners in the Vaccine Program. Ms. McMurtry's award included a relatively complicated annuity and the undersigned can accept the attorneys' representation that an in-person meeting was reasonable. However, the reasonableness of the trip does not necessarily make the expenses incurred on the trip reasonable.

As to the reasonableness of the expenses, Ms. McMurtry exceeded the bounds of reasonableness for both food and lodging. Mr. Carney's submitted meal receipts explicitly include or implicitly suggest Mr. Carney seeks reimbursement for alcohol. Id. at PDF 105-06.[4] The National Vaccine Injury Compensation Program does not reimburse for alcohol. Bhuiyan v. Sec'y of Health & Human Servs., No. 05–1269V, 2015 WL 2174208, at *8 (Fed. Cl. Apr. 16, 2015).

Even more concerning is Mr. Carney's decision that for this trip it was appropriate to spend three nights and four days at The Phoenician Scottsdale, a luxury resort, at the nightly rate of $629.89. Id. at PDF 115. The Phoenician describes itself as "Arizona's premier luxury resort destination." His total hotel bill for three nights at the resort: $2,175.65. Id. Ms. McMurtry has not supported this expense.

The four-day trip to The Phoenician Scottsdale parallels another recent case where Mr. Carney requested reimbursement for a weekend trip to Atlanta, GA to meet with a client. Although Mr. Carney made it a weekend getaway, the only work in that case was performed on the previous Friday. In that case, Chief Special Master Dorsey declined to reimburse the petitioner for the portion of the trip not associated with the petition. Jones v. Sec'y of Health & Human Servs., No. 16-0308V (Fed. Cl. Spec. Mstr. June 22, 2018).

The undersigned will apply the same approach here. The undersigned will reimburse Mr. Carney for a two-night hotel stay. However, the undersigned will not reimburse the extravagant rates spent by Mr. Carney, but instead $250 per

---

[4] Although in an October 18, 2018 status conference Mr. Carney represented that he charged only half ($37.50) the amount of the total bill ($71.50) to eliminate the alcohol, the splitting of the bill still does not account for the amount of alcohol purchased at the meal in question.

night, a rate the undersigned finds reasonable for the Phoenix, AZ area. In addition, instead of attempting to subtract out Mr. Carney's alcohol expenses for the trip, which is impossible because most receipts do not include a breakdown of between food and alcohol, Mr. Carney will be reimbursed a per diem of $60 per day for three days. The parking and taxi fees will be reimbursed in full. However, the $91.96 seat upgrade fare will not be reimbursed. In total, of the $2,567.47 in costs associated with this trip (exclusive of fees) that Mr. Carney billed for this trip, Ms. McMurtry is reimbursed $1,245.66.[5]

This case presents a good example of the perils of the Secretary's decision to not participate in the adjudication of petitioners' motions for fees and costs. The contents of Ms. McMurtry's motion include items that should not have been submitted for reimbursement from the Trust Fund and yet the Secretary stayed silent, leaving the undersigned to police the petitioner. As cogently noted, the Secretary's position promotes a culture where these overcharges will only continue. See Van Vessem v. Sec'y of Health & Human Servs., No. 11-132V, 2018 WL 3989517, at *12 (Fed. Cl. Spec. Mstr. July 3, 2018).

The Secretary's failure to participate does not excuse errors on Mr. Carney's part. Having been alerted to problems with their billing, especially with regards to costs of travel, Mr. Carney and Mr. Cohan are expected to exercise billing judgment when submitting their invoices. They are also expected to review pending submissions to see if there were any oversights. Furthermore, Mr. Carney and Mr. Cohan are warned that they may be penalized in the form of reductions to their future fee awards if their motions for fees continue to include unreasonable requests. See Valdes v. Sec'y of Health & Human Servs., No. 99-310V, 2009 WL 1456437, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2009) (noting that penalties may be necessary to motivate an attorney to submit requests for fees that do not contain "erroneous, duplicative, or unreasonable entries"), mot. for rev. granted in non-relevant part and denied in non-relevant part, 89 Fed. Cl. 415 (2009).

### III.   Conclusion

Accordingly, Ms. McMurtry is awarded:

---

[5] In the October 18, 2018 status conference, Mr. Carney represented that he intended to subtract at least some portion of this trip, and that the invoicing of the full trip was his mistake. However, Mr. Carney billed two hours in this case for his "review of all billing entries."

**A lump sum of $73,324.43 ($46,341.85 in fees plus $26,982.58 in costs) in the form of a check made payable to petitioner and petitioner's attorney, Lawrence R. Cohan.**

This amount represents reimbursement for attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e). In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[6]

Petitioner's counsel is also ORDERED to submit a copy of this decision alongside any motion for fees and costs submitted on behalf of the petitioner in Mahroof v. Sec'y of Health and Human Servs, No. 16-521.

**IT IS SO ORDERED**.

S/Christian J. Moran
Christian J. Moran
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.